UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆

**PETER CISZEWSKI and MARLA MERANTE,**

**Plaintiffs,**

**-vs-**                                                    **05-CV-0167**

**STATE OF NEW YORK, Governor GEORGE E.
PATAKI and NYS DOT Commissioner JOSEPH H.
BOARDMAN,**

**Defendants.**

◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆

APPEARANCES:

Joshua A. Sabo, Esq.
421 New Karner Road, Suite 3
P.O. Box 15072
Albany, New York 12212
Attorney for Plaintiffs

Hon. Eliot Spitzer, Attorney General of the State of New York
Patrick F. MacRae, Assistant Attorney General
615 Erie Boulevard West, Suite 102
Syracuse, New York 13204
Attorneys for Defendants

**Hon. Norman A. Mordue, Chief U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**INTRODUCTION**

This action pursuant to 42 U.S.C. § 1983 concerns property formerly owned by plaintiffs

described in acquisition maps filed with the Essex County Clerk on August 10, 2004.  Plaintiffs

claim that defendants acquired their property by way of a New York State condemnation

proceeding which did not satisfy the requirements of the Due Process Clause of the Fifth and

Fourteenth Amendments.  The Court granted limited temporary relief to plaintiffs on February 11,

2005 (Dkt. No. 8).  On May 26, 2005, the Court issued a Memorandum-Decision and Order (Dkt.

No. 34) denying plaintiffs' motion for a preliminary injunction and vacating the temporary restraining order.

Defendants now move (Dkt. No. 40) for summary judgment dismissing the amended complaint (Dkt. No. 31).  For the reasons set forth below – primarily because the two issues raised by plaintiffs (*i.e.*, the state's determination that it was exempt from certain state statutory procedures, and the timeliness of the acquisition under state law) are not issues as to which plaintiffs are entitled to due process – the Court grants the motion and dismisses the action in its entirety.

### NEW YORK'S EMINENT DOMAIN PROCEDURE LAW

The Court briefly summarizes the pertinent aspects of the condemnation procedure under New York Eminent Domain Procedure Law ("EDPL") at the time of the events in issue.[1]  Apart from the determination of the amount of compensation for the taking, which is not in issue here, it involves two steps: first, the condemnation determination, that is, the condemnor's determination of factors including the public purpose of the project and its location, EDPL Article 2; and second, the acquisition process, that is, the process of vesting title in the condemnor, EDPL Article 4.

EDPL Article 2 spells out the procedure for the first step, the condemnation determination.  Prior to acquisition, the condemnor must conduct a public hearing "in order to inform the public and to review the public use to be served by a proposed public project and the impact on the environment and residents of the locality where such project will be constructed[.]"

---

[1]

The EDPL was amended in 2004 to enhance certain notice requirements.  *See* L. 2004 c. 450 §§ 1-5 (eff. Jan. 12, 2005).  Because the amendments were not in effect at the time of the events herein and have no bearing on the issues in this case, the Court in its discussion refers to the pre-amendment EDPL.

EDPL § 201.  After the public hearing, the condemnor must make a determination and findings specifying the public use, benefit or purpose to be served by the proposed project; the approximate location of the proposed public project and the reasons for the selection of that location; the general effect of the proposed project on the environment and residents of the locality; and such other factors as the condemnor deems relevant.  EDPL § 204(B).  The condemnor must then publish a brief synopsis of its determination and findings.  EDPL § 204(A).  Anyone aggrieved by the findings and determination may obtain judicial review thereof.  EDPL § 207.

In certain circumstances, a condemnor may be exempt from compliance with the requirements of Article 2.  *See* EDPL § 206.  Section 206(A), relied on by defendants in the case at bar, exempts a condemnor that "considers and submits" to a governmental agency (*i.e.*, a state, federal or local governmental agency, board or commission) "factors similar to those enumerated in" section 204(B), and obtains from that governmental agency "a license, a permit, a certificate of public convenience or necessity or other similar approval."

The next stage of the procedure is the acquisition proceeding under EDPL Article 4.  Where, as here, the condemnor is the State of New York, acquisition of the condemned property may be accomplished pursuant to section 402(A).[2]  This section requires the State to do the following: file an acquisition map with the office of the commissioner of the agency performing the taking, EDPL § 402(A)(1); notify the condemnee by first class mail that the condemnor "is now taking steps to acquire such property," EDPL § 402(A)(2); and file a certified copy of the

---

[2]

All other condemnors are required to petition New York State Supreme Court for an order to acquire the property and for permission to file an acquisition map.  EDPL § 402(B).  Where a condemnor proceeds under section 402(B), the condemnee is entitled to notice of the proceeding and may appear and answer.

acquisition map in the office of the County Clerk in which the property is located, whereupon "the acquisition of the property by the state, described in such map shall be deemed complete and title to such property shall be vested in the state."  EDPL § 402(A)(3).

## FACTS

Briefly, the undisputed background facts are as follows.[3]  In August 1999, New York Department of Transportation ("DOT") completed a Draft Design Report/Draft Environmental Impact Statement ("DEIS") concerning the construction of a new bridge.  On August 13, 1999, DOT and other cooperating agencies submitted the DEIS to the U.S. Department of Transportation Federal Highway Administration ("FHWA").[4]  The DEIS included a detailed study of two possible alternative locations for the new bridge (the "upstream" location and the "downstream" location); a description of the public use, benefit and purpose to be served by the project; and information on the general effect of the proposed project on the environment and residents of the area.  A duly noticed public hearing took place on November 9, 1999, at which DOT and others addressed the two proposed alternative locations, the public benefit, and the general impact of the proposed project on the environment and local residents.  On February 7, 2000, the Essex County Board of Supervisors issued a Resolution stating that it "hereby supports the siting and construction of a new bridge" at the downstream location.

On June 20, 2002, DOT submitted to FHWA the Final Environmental Impact Statement ("FEIS").  The FEIS relied on the conclusions in the DEIS regarding the public use and the

---

[3]

A more detailed recital of the background facts is set forth in the Court's previous Memorandum-Decision and Order (Dkt. No. 34).

[4]

FHWA approval of the project was required because the project was governed by the Federal Highway Bridge Replacement and Rehabilitation Program.  *See* 23 U.S.C. § 144.

general impact of the proposed project, and recommended the downstream location.  FHWA

approved the FEIS on August 6, 2002, and, on December 19, 2002, issued a Record of Decision

approving the downstream location.  On December 30, 2002, DOT issued a Record of Decision

which, along with the FHWA Record of Decision, completed the environmental analysis and

public hearing phase of the project.  On January 6, 2003, the Essex County Highway

Superintendent approved the plan as described in the FEIS.

Meanwhile, on October 10, 2001, plaintiffs signed a contract to purchase a 68-acre parcel

of land.  The downstream location of the project contemplated the fee taking of seven acres of this

parcel for construction of the access roads to the new bridge.[5]  The contract of sale stated that

plaintiffs were purchasing the property "with full knowledge that the property will be the future

site" of the access roads to the future bridge, and that they were buying the property "subject to

the ability of the State of New York and the County of Essex to construct these roads."

According to the complaint, the purchase was completed on January 24, 2002.

Plaintiffs acknowledge that on May 6, 2004, they received a letter notifying them that

DOT had "started to acquire property" described in Map 7, *see* EDPL § 402(A)(2) (state must

notify condemnee that it "is now taking steps to acquire such property"); the letter stated the

purpose of the acquisition, apprised plaintiffs of the appraised valuation of the property being

acquired, and offered them compensation equal to the valuation.  Although they retained counsel

in June 2004, plaintiffs took no action in response to the notice.

On May 14, 2004, Acquisition Map 7 depicting the seven acre parcel to be taken in fee

was filed by DOT in the office of the DOT Commissioner.  *See* EDPL § 402(A)(1) (state must file

---

[5]

The anticipated construction activity also necessitated the taking of a temporary easement, which
is not in issue here.

acquisition map in main office of entity for which acquisition is being made).  On August 10, 2004, DOT completed the acquisition by filing the acquisition map with the Office of the Clerk of Essex County.  EDPL § 402(A)(3) (state must file acquisition map in county clerk's office, whereupon acquisition is complete).  In compliance with EDPL § 502, DOT served on plaintiffs notices of appropriation by certified mail on August 23, 2004.  Plaintiffs received the notices on August 28, 2004, but took no action to challenge the acquisition of their property.

Plaintiffs did not vacate the acquired premises.  DOT brought a summary possession proceeding and on December 20, 2004, the Town of Jay Justice Court granted DOT full possession of the acquired parcel.  On February 7, 2005, plaintiffs commenced this action.

## AMENDED COMPLAINT

In their amended complaint (Dkt. No. 31), plaintiffs set forth eight causes of action.  The first six causes of action state civil rights claims under 42 U.S.C. § 1983.  Recovery under section 1983 "is premised upon a showing, first, that the defendant has denied the plaintiff a constitutional or federal statutory right and, second, that such denial was effected under color of state law."  *Patterson v. Coughlin*, 761 F.2d 886, 890 (2d Cir. 1985).  Violations of state law that do not rise to the level of constitutional violations will not support a section 1983 claim.  *See Cook v. Sheldon*, 41 F.3d 73, 77 (2d Cir. 1994).

Plaintiffs base their section 1983 causes of action on alleged deprivations of due process under the Fifth and Fourteenth Amendments.  More specifically, they claim that defendants infringed their due process rights as follows: failing to provide plaintiffs an opportunity for an adversarial hearing on the issue of the State's determination that it was exempt from the notice and hearing requirements of EDPL Article 2 (first cause of action); failing to provide an opportunity for judicial review of the same determination (second cause of action); failing to

-6-

provide an opportunity for an adversarial hearing on whether the eminent domain proceeding was timely commenced (third cause of action); failing to provide an opportunity for judicial review of the same issue (fourth cause of action); and failing to provide plaintiffs with notice that the State had commenced eminent domain proceedings on June 25, 2004,[6] when it filed acquisition maps (fifth cause of action). In the sixth cause of action, plaintiffs further challenge the constitutionality of EDPL § 402(A) in that it permits a taking without an adversarial proceeding or judicial review concerning the timeliness and propriety of the taking.

In the seventh cause of action, plaintiffs assert that the section 206 exemption from the requirements of Article 2 violates the Uniform Real Property Acquisition Act. The eighth cause of action is for attorney's fees pursuant to 42 U.S.C. § 1988. Plaintiffs seek declaratory and injunctive relief, nominal damages, and a money judgment for attorney's fees.

**DISCUSSION**

**Summary Judgment Standard**

Defendants move (Dkt. No. 40) for summary judgment. A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the Court, viewing the evidence in the light most favorable to the nonmovant and drawing all reasonable inferences in nonmovant's favor, determines that the movant has satisfied this burden, the burden then shifts to the nonmovant to adduce evidence establishing the existence of a disputed issue of material fact requiring a trial. *See Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989). If the nonmovant fails to carry this

---

[6]

Presumably plaintiffs are referring to DOT's filing of the acquisition maps in its main office pursuant to EDPL 402(A)(1); according to defendants, this occurred on May 14, 2004, not June 25, 2004.

burden, summary judgment is appropriate.  *See Celotex,* 477 U.S. at 323.

**Causes of Action One and Two**

The Court first addresses defendants' argument that they are entitled to summary judgment as a matter of law on causes of action one and two.  These two causes of action aver that plaintiffs were denied due process because they were denied an adversarial hearing and an opportunity for judicial review of the State's determination that it was exempt pursuant to section 206(A) from the notice and hearing requirements of section 204.

As noted above, ordinarily the condemnor is required by Article 2 to hold a public hearing prior to acquisition; to make a determination and findings based on factors including the public use, benefit or purpose to be served by the project, the approximate location for the project, the reasons for the selection of that location, and the general effect of the project on the local residents and the environment; and to publish a brief synopsis of the determination and findings. EDPL §§ 201, 204(A),(B).

In the case at bar, DOT utilized the section 206(A) exemption from compliance with Article 2, based on its submission to FHWA of factors (including public use) similar to those required by EDPL § 204(B).  FHWA determined the issues in a Record of Decision, issued December 19, 2002.  DOT adopted FHWA's decision on December 30, 2002.  According to plaintiffs, as a result of this procedure, they received no notice of the final determination to condemn their property until the Article 4 acquisition procedure was underway.

Plaintiffs argue that due process requires that they be given an adversarial hearing and an opportunity for judicial review on the issue of whether the condemnor is exempt under section 206(A) from the notice, hearing, and determination and finding requirements of Article 2.[7]

---

[7] It has been held that an exemption determination under EDPL § 206 may be challenged in a

Plaintiffs rely on the Supreme Court holding in *Mullane v. Central Hanover Bank & Trust Co.*, that procedural due process requires that a deprivation of property be preceded by notice that is "reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of the action," 339 U.S. 306, 314 (1950), and an "opportunity for hearing appropriate to the nature of the case." *Id.* at 313.  The *Mullane* court further observed: "The fundamental requisite of due process of law is the opportunity to be heard... [but the] right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest."  *Id*. at 314 (internal citation omitted).

In opposition, defendants here point out that "[t]he Fifth Amendment, as applied to the states through the Fourteenth Amendment, imposes two limitations on the sovereign's right to exercise eminent domain: the taking must be for public use, and the owner must receive just compensation."  *Brody v. Village of Port Chester* ("*Brody*"), 434 F.3d 121, 127 (2d Cir. 2005); *see North Laramie Land Co. v. Hoffman*, 268 U.S. 276, 285 (1924) ("[T]he necessity and expediency of the taking of property for public use are legislative questions, no matter who may be charged with their decision, and a hearing thereon is not essential to due process" (internal quotation marks omitted)).  Defendants argue that, inasmuch as plaintiffs do not assert a deprivation of an opportunity to contest either the amount of compensation or the public use, plaintiffs have alleged no deprivation of a due process right to notice, a hearing, or judicial review.

---

special proceeding under New York Civil Practice Law and Rules, Article 78.  *See Piotrowski v. Town of Glenville*, 475 N.Y.S.2d 511 (3d Dep't 1984).  Also, a condemnee may challenge an exemption determination by raising the issue in its answer to the condemnor's section 402(B) acquisition petition.  *See, e.g., Matter of Rockland Co. Sewer Dist. No. 1 v. J. & J. Dodge, Inc.* 635 N.Y.S.2d 233, 235 (2d Dep't 1995).  However, where, as in the case at bar, the State as condemnor proceeds under section 402(A), it is not required to petition for acquisition.

In considering these two causes of action, this Court turns for guidance to the Second Circuit's comprehensive decision in *Brody*. 434 F.3d 121.  *Brody* concerned whether and in what manner a condemnee seeking to challenge public use was entitled to notice of a public use determination in a condemnation proceeding under EDPL 204.  The court addressed the issue in the context of the broader question of what procedural due process rights are implicated when a sovereign exercises its inherent power of eminent domain.  After acknowledging the general due process requirement that a deprivation of property be preceded by reasonable notice and an opportunity for a hearing appropriate to the nature of the case, 434 F.3d at 127 (citing *Mullane*, 339 U.S. at 313), the Second Circuit observed:

> Takings cases raise additional constitutional concerns. The Fifth Amendment, as applied to the states through the Fourteenth Amendment, imposes two limitations on the sovereign's right to exercise eminent domain: the property taken must be for public use, and the owner must receive just compensation. U.S. CONST. amend. V ("nor shall private property be taken for public use, without just compensation"). We must decide whether, and to what extent, the public use and just compensation limitations trigger procedural due process rights for the condemnee.

*Id*. at 127.

In addressing the question of whether the public use limitation triggers due process rights for the condemnee, the Second Circuit rejected the condemnor's argument that public use is essentially a legislative decision not subject to the requirements of due process.  The court stated:

> While we agree that due process rights do not attach to legislative actions, the issue here is whether such rights attach to a judicial proceeding established to allow aggrieved persons to assert a constitutionally prescribed limitation on a legislative action, *i.e*., the review procedure for challenging a public use determination made pursuant to the EDPL. At the outset, we must note that, despite the broad deference given to the government's decision to exercise its power of eminent domain, at bottom, the question what is a public use remains a judicial one which the courts must decide in performing their duty of enforcing the provisions of the Federal Constitution. The Supreme Court has long recognized this crucial, albeit limited, role that the courts play in enforcing the public use limitation.  Thus, while the legislative decision to condemn is not reviewable, the purpose of the condemnation is. The role of the judiciary, however narrow, in

-10-

> setting the outer boundaries of public use is an important constitutional limitation. To say that no right to notice or a hearing attaches to the public use requirement would be to render meaningless the court's role as an arbiter of a constitutional limitation on the sovereign's power to seize private property.

Id. at 128-29 (citations, internal quotes, and brackets omitted). The court concluded that the condemnee is entitled to notice and an opportunity to be heard on the public use determination, and proceeded to address the appropriate means and content of such notice and the sufficiency of the section 207 procedure, matters which are not in issue in the case at bar.

In rejecting the argument by the plaintiffs in *Brody* that they are entitled to a full hearing before the condemnor makes its initial condemnation decision, the Second Circuit noted:

> Once the issue of public use is settled, the necessity and expediency of the taking are legislative questions, and a hearing thereon is not essential to due process in the sense of the Fourteenth Amendment. The court has no power to alter the decisions of the legislature once the court has determined that a taking is for public use. Consequently, as to the legislative aspects of the Village's condemnation decision – that is, <u>for all issues other than the binary decision of public use *vel non* – the legislative process is all the process that is due</u>.

434 F.3d at 133 (emphasis added; citations, internal quotes, and ellipses omitted).

Applying the principles articulated in *Brody* to the case at bar, the Court rejects plaintiffs' contention that they were entitled to an adversarial hearing and an opportunity for judicial review of DOT's determination that, pursuant to EDPL § 206(A), it was exempt from the requirements of EDPL Article 2. The exemption determination in itself raises no due process concerns; it does not concern a constitutionally-imposed limitation on the sovereign's power and thus does not trigger procedural due process rights for the condemnee.

Nor do plaintiffs assert that the exemption determination subsumes some other issue which does implicate a constitutionally-imposed limitation on the sovereign's power. Although at one point plaintiffs' Memorandum of Law refers to the exemption determination as the "functional equivalent" of a public use determination, the amended complaint does not advance a

claim that plaintiffs were denied the opportunity to contest public use as a result of the exemption procedure. A denial of an opportunity to challenge an exemption determination does not necessarily constitute a denial of an opportunity to challenge a public use determination. In this respect, the Court notes that, presumably because plaintiffs did not base their claims on a denial of an opportunity to contest public use, the parties did not address whether an opportunity to contest public use was afforded in conjunction with the DEIS or FEIS process or at some other point in these lengthy proceedings. Moreover, plaintiffs do not claim that if they had been given an opportunity to contest public use, they would have done so; possibly this is because the public purpose of an access road to a bridge cannot be gainsaid. Causes of action one and two do not place before the Court any due process issue relative to the public use limitation.

Accordingly, although plaintiffs couch their arguments concerning causes of action one and two in due process terms, a close reading of their amended complaint and Memorandum of Law demonstrates that these two claims are not based on a matter which triggers their rights to due process. At most, they allege a violation of state law. And, as noted above, a deprivation of state-law rights alone will not support a section 1983 action.

Plaintiffs also complain that DOT's determination to submit to FHWA factors similar to those required by EDPL § 204(B) was made in 1999, prior to their purchase of the property, and "was not revisited upon completion of the events alleged to have comprised the exemption in December of 2002 and January of 2003." They argue that, as a result, the time to challenge the exemption determination had elapsed before they purchased the property.[8] However, even if this

---

[8]

As previously noted, it has been held that an exemption determination under EDPL § 206 may be challenged in a special proceeding under New York Civil Practice Law and Rules, Article 78, which has a four-month limitation period. *See Piotrowski v. Town of Glenville*, 475 N.Y.S.2d 511

is so, it is a matter between plaintiffs and the person from whom they purchased the property; in fact, it is undisputed that when they purchased the property plaintiffs were informed of the condemnation proceeding.  Again, this argument does not raise a due process issue.

The Court rejects the other arguments raised by plaintiffs and concludes as a matter of law that causes of action one and two of the amended complaint do not state cognizable due process claims.

**Causes of Action Three and Four**

The Court next considers defendants' argument that they are entitled to summary judgment on causes of action three and four.  In these two causes of action, plaintiffs claim they were denied due process because they were denied an adversarial hearing and an opportunity for judicial review of whether the Article 4 acquisition proceeding was timely commenced, that is, whether it was commenced in compliance with EDPL § 401(A)(2).

Under section 401(A)(2), a condemnor claiming to be exempt under section 206(A) must commence an Article 4 acquisition proceeding within three years after "the date of the order or completion of the procedure that constitutes the basis of exemption[.]"  If the condemnor fails to do so, "the project shall be deemed abandoned, and thereafter, before commencing [acquisition] proceedings ... the condemnor must again comply with the provisions of article two[.]"  EDPL § 401(B); *see Binghamton Urban Renewal Agency v. Manculich*, 67 N.Y.2d 434, 438-39 (1986).[9]

---

(3d Dep't 1984).

[9]

The purpose of the three-year limit is "not to provide a means of foreclosing development, but to assure that development is preceded at appropriate intervals by an environmental review process involving the affected community." *250 West 41st Street Realty Corp. v. New York State Urban Dev't Corp.*, 715 N.Y.S.2d 407, 408 (1st Dep't 2000) (citation omitted).

As with the exemption issue discussed above, no constitutional issue is implicated by the condemnor's failure to take title within any particular time period, and "the legislative process is all the process that is due." *Brody*, 434 F.3d at 133. At most, plaintiffs allege a violation of state law. The Court finds that causes of action three and four of the amended complaint do not state a cognizable due process claim.[10]

**Fifth Cause of Action**

In the fifth cause of action, plaintiffs claim they were denied due process when DOT "failed to provide the plaintiffs with actual notice that the State had commenced eminent domain proceedings against the plaintiffs on June 25, 2004 by filing acquisition maps in the office of the Commissioner of the Department of Transportation and by failing to notify the plaintiffs at any time in writing that an eminent domain proceeding was now pending against them." Plaintiffs do not dispute that they were notified on May 6, 2004, that DOT had "started to acquire" the property. *See* EDPL § 402(A)(2). That the section 402(A)(2) notice was mailed prior to the section 402(A)(1) DOT filing does not, without more, implicate due process. Nor do plaintiffs dispute that on August 28, 2004, they received notice that the acquisition map had been filed in

---

[10] It is the Court's view that DOT complied with the three-year limitation in EDPL § 401(A)(2) (see general discussion in the Memorandum-Decision and Order (Dkt. No. 34)). It does not appear that DOT issued a formal determination of exemption at the close of the Article 2 process; however, by proceeding to the acquisition stage under Article 4, DOT in effect determined that the requirements of Article 2 had been satisfied by FHWA's December 19, 2002 Record of Decision as to public use, the need for the project, its location, and other matters bearing on the decision to condemn the property. Clearly, FHWA's December 19, 2002 Record of Decision (or DOT's December 30, 2004 decision) constituted "the order or completion of the procedure that constitutes the basis of exemption, EDPL § 401(A)(2), and the Article 4 acquisition proceeding was commenced within three years thereafter. Moreover, even if DOT failed to commence the acquisition proceeding in compliance with section 401(A)(2), such failure would constitute merely a violation of state law and thus would not support a claim under 42 U.S.C. § 1983. *See Cook v. Sheldon*, 41 F.3d 73, 77 (2d Cir. 1994).

-14-

the office of the Essex County Clerk on August 10, 2004.  *See* EDPL § 402(A)(3).  As with the issues discussed above, this cause of action does not raise an issue of constitutional dimension.

**Sixth Cause of Action**

In the sixth cause of action, plaintiffs further challenge the constitutionality of EDPL § 402(A) on the ground that it permits a taking without an adversarial proceeding or judicial review concerning the timeliness and propriety of the taking.  It is clear from the amended complaint and plaintiffs' summary judgment submissions that the issues raised in this cause of action do not concern public use or just compensation.  Rather, plaintiffs urge this Court to rewrite Article 4 to require the State to follow the procedures in section 402(B), so that "every instance in which the State is alleged to have wrongly claimed an exemption for Article 2 of the EDPL and every instance in which the State is alleged to have begun a condemnation after its time to do so has expired would be decided by a court after an adversarial proceeding."  Again, the condemnee has no right to due process with respect to either of these two issues.  Accordingly, as discussed above in connection with causes of action one through four, "the legislative process is all the process that is due."  *Id.*

**Seventh Cause of Action**

In the seventh cause of action, plaintiffs assert that the exemption from the requirements of Article 2 violates the Uniform Real Property Acquisition Act, 42 U.S.C. § 4651.  This provision creates no rights in condemnees.  *See* 42 U.S.C. § 4602(a) ("The provisions of section 4651 of this title create no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation."); *Tennessee Gas Pipeline Co. v. New England Power, C.T.L., Inc*., 6 F. Supp.2d 102 (D. Mass. 1998), *and cases cited therein*.  The seventh cause of action is dismissed.

**Eighth Cause of Action**

The eighth cause of action is for attorney's fees pursuant to 42 U.S.C. § 1988. Section 1988(b) permits the Court in its discretion to allow reasonable attorney's fees as part of the award of costs to a prevailing party in a section 1983 action. Inasmuch as the Court hereby dismisses plaintiffs' action on the merits, plaintiffs are not entitled to an award of attorney's fees.

**CONCLUSION**

It is therefore

ORDERED that defendants' motion (Dkt. No. 40) for summary judgment dismissing the amended complaint is granted on the merits; and it is further

ORDERED that the action is dismissed.

IT IS SO ORDERED.

January 10, 2007
Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge

-16-